MARY F. PERRIN, Plaintiff, *v.* ALFRED R. PERRIN, Defendant.

Supreme Court, New York County, March 4, 1931.

*Frank Aranow,* for the plaintiff.

*Isidore Shapiro,* for the defendant.

COLLINS, J. This controversy arises from the marital differences of the parties.

The amended complaint alleges three causes of action. The first seeks to have declared invalid an absolute decree of divorce obtained by the defendant against the plaintiff in the State of Pennsylvania on June 4, 1929, on the ground of cruelty. The basis for this demanded relief is that the plaintiff (the defendant in the Pennsylvania action) was not personally served with process within

the State of Pennsylvania and did not appear in that action. A declaratory judgment is sought adjudicating that, despite the Pennsylvania decree, the plaintiff is the wife of the defendant.

The second cause asks for a separation on the grounds of abandonment and non-support, together with permanent alimony.

The third cause seeks to have set aside and declared invalid an agreement entered into between these parties on November 2, 1928, whereby the plaintiff, in consideration of the sum of $1,000, concededly paid to her by the defendant's brother, released the defendant from any and all claims of support and from all other obligations and responsibilities. The plaintiff charges that this agreement was an improvident one and that she was induced to enter into same by false representations respecting the defendant's health and financial resources. She asserts that she was driven to the acceptance of this improvident bargain by her financial necessities and ill health, occasioned by the defendant's neglect to perform the provisions of a prior separation agreement entered into between the parties in April, 1926, whereunder the defendant agreed to pay to the plaintiff twenty dollars weekly.

The answer denies the material allegations of the amended complaint and contains various separate defenses to each of the three causes.

One of the defenses to the third cause sets up a general release executed by the plaintiff on November 2, 1928. Another defense to the third cause alleges ratification and confirmation of the agreement of November 2, 1928, sought to be nullified by the plaintiff. On the trial the answer was amended so as to claim justification for the defendant's desertion of the plaintiff, various acts of cruelty being pleaded.

The plaintiff, a registered nurse, who had not been previously married, intermarried in New Jersey in July, 1923, with the defendant, a practicing dentist in New York city. At that time she was in her late thirties and the defendant was in his late forties. The defendant had been previously married. His first wife divorced him. As issue of such first marriage, there are three sons, two of them adults.

Almost immediately after the marriage of the parties hereto quarrels ensued, culminating in their separation in the State of New Jersey in August, 1924. At no time did they live together as husband and wife in the State of New York.

Since the separation the plaintiff continuously resided, and now resides, in the State of New York. For a time the defendant resided in New Jersey, and thereafter, for a while, in New York. He claims to have established a residence in Pennsylvania in about

September, 1927. In October, 1928, he began an action for absolute divorce against the plaintiff in Pennsylvania. The plaintiff here was not personally served with process in that State, nor did she appear in that action. The Pennsylvania suit resulted in a decree of absolute divorce in favor of the husband. Such decree, however, is entitled to no recognition in this State.

The defendant's claim that although the plaintiff was not personally served in the Pennsylvania action and did not appear therein, she was constructively within the State because he was justified in abandoning her, and that, consequently, *her* residence was *his* residence, is without force. By virtue of the separation agreement of April, 1926, the plaintiff was enabled to establish a residence of her own. (*Licht* v. *Licht*, 88 Misc. 107.) Such residence she established in New York. Accordingly, the Pennsylvania decree, obtained without personal service, or appearance, is of no validity here. (*Ball* v. *Cross*, 231 N. Y. 329, 331; *Dean* v. *Dean*, 241 id. 240; *Powell* v. *Powell*, 211 App. Div. 750; *Licht* v. *Licht*, *supra*.)

I conclude, therefore, that the plaintiff must prevail in her first cause of action. (*Baumann* v. *Baumann*, 222 App. Div. 460; affd. in the main, 250 N. Y. 382; *Greenberg* v. *Greenberg*, 218 App. Div. 104.)

As to the second cause of action, the defendant challenges the jurisdiction of this court, contending that the New York courts have jurisdiction of neither the parties nor the subject-matter.

Section 1162 of the Civil Practice Act prescribes the conditions under which a plaintiff may maintain a separation action in this State. Subdivision 1 of that section provides that such action may be maintained here where both parties are residents of the State when the action is commenced. Subdivision 2 stipulates that where the parties were married within the State and the plaintiff is a resident thereof when the action is commenced, the court has jurisdiction. The final subdivision, 3, confers jurisdiction upon the court "Where the parties, having been married without the State, have become residents of the State, and have continued to be residents thereof at least one year; and the plaintiff is such a resident when the action is commenced."

Since the parties were not married within the State, subdivision 2 is irrelevant.

Subdivision 1 has no application since, though the plaintiff was a resident of the State at the time of the commencement of the action, I am satisfied that the defendant was a non-resident.

From about September, 1927, the defendant has maintained a residence at New Hope, Bucks county, Penn. True, he continued

to maintain his dental office in New York city, but he commuted to New Hope, going there virtually every week end; kept his personal property there; paid local taxes there, and otherwise evinced his regard of that place as his domicile. Since 1927 his New York State income tax returns were made as a non-resident of this State; since 1928 his automobile has been registered in Pennsylvania; since about September, 1927, his sole bank account has been in New Hope; he maintains a post office box in New Hope; since 1927 he has maintained a room at New Hope; he has become a part of the community of New Hope, and has voted there.

I am persuaded that the defendant at the time he established his residence at New Hope did not do so with the intention of getting a divorce. Even if such were his intention, if his residence in Pennsylvania were *bona fide*, the *purpose* of establishing same would not vitiate the intention of making it his permanent place of residence.

" Motives are immaterial, except as they indicate intention. A change of domicile may be made through caprice, whim or fancy, for business, health or pleasure, to secure a change of climate or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention." (*Matter of Newcomb*, 192 N. Y. 238, 251.) (See, also, *Mabson* v. *Mabson*, 225 App. Div. 744; affd., 251 N. Y. 584; *Matter of Bennett*, 135 Misc. 486; *United States Trust Co.* v. *Hart*, 150 App. Div. 413, 417; affd., 208 N. Y. 617; *de Meli* v. *de Meli*, 120 id. 485; *Gwathmey* v. *Gwathmey*, 116 Misc. 85; affd., 201 App. Div. 843.) " * * * there must be a union of residence and intention." (*Matter of Newcomb*, *supra*, at p. 250.)

" * * * domicile may exist without actual residence, but never without intention." (*United States Trust Co.* v. *Hart*, *supra*, at p. 417.)

That the defendant continued to conduct his office in New York and maintained a room there, whilst evidentiary, is not conclusive in negativing the intention of making New Hope his permanent place of residence.

" In a strict legal sense, that is properly the domicile of a person, where he has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." (Story Conflict of Laws [8th ed.], § 41.)

" Assuming that defendant could have but one domicile, he was not obligated to reside at such domicile, but was privileged, as he did, to establish a residence in France." (*Gould* v. *Gould*, 235 N. Y. 14, 29.)

On all the evidence, therefore, I hold that at the time of the commencement of this action the defendant was a *bona fide* resident of the State of Pennsylvania.

The defendant insists that subdivision 3 of section 1162 of the Civil Practice Act excludes this case from the provisions thereof in that it has been held that the residence referred to therein comprehends a joint domicile of husband and wife, within this State, for at least one year continuing to the time of their separation, and that since the element of a joint residence is absent, the second cause of action does not come within the intent and purview of subdivision 3.

*Elwell* v. *Elwell* (70 Misc. 61) is relied upon as authority for this position.

The plaintiff counters with some plausibility that the *Elwell* decision constitutes " judge-made law," and insists that it places an interpretation upon subdivision 3 neither authorized nor contemplated by its language or design.

In the *Elwell* case the parties were married in France. Subsequently they became residents of this State and continued as such for nineteen years. Thereafter they removed to New Jersey, where they both continuously resided until the defendant excluded his wife from his house there. Thereupon the plaintiff established a separate domicile in New York and continued to reside in New York until the commencement of the action. The defendant continued to maintain a residence in New Jersey.

Mr. Justice GREENBAUM, in dismissing the complaint on the ground of lack of jurisdiction, referred to *Bierstadt* v. *Bierstadt* (29 App. Div. 210), where it was pointed out that under the Revised Laws of 1813 (2 R. L. 200, § 10) there were only two subdivisions of what is now section 1162 of the Civil Practice Act, and that a third provision was incorporated, corresponding with subdivision 3 of what is now section 1162, and that such new provision was designed " to supply an omission " applicable to the case of a non-resident defendant where the marriage occurred without the State and where the parties had maintained a joint domicile here for at least one year, and where the wife thereafter maintained her residence in this State.

Mr. Justice GREENBAUM mentions that " special reference is made to the notes of the revisers calling attention to this ' omission.' "

Continuing, Mr. Justice GREENBAUM, who deemed the question before him an original one, held: " Such an interpretation appears to be reasonable and convincing. It seems to me that subdivision ' 3 ' of the Revised Statutes was evidently designed to cover the

not infrequent case of a couple married without the State who had acquired a joint domicile within this State of at least one year, and where the husband deserted and abandoned his wife in this State or gave her other grounds for a separation and left this jurisdiction. In such a case the wronged party, continuing her residence in the State and retaining the last domicile resulting from her married relationship, was permitted to assert her rights where such domicile was. The amendment to the Revised Laws of 1813, incorporated in the Revised Statutes (2 R. S. 146, ¶ 50) reads as follows: ' 3. Where the marriage shall have taken place out of this State and the parties have become and remained inhabitants of this State at least one year, and the wife shall be an actual resident at the time of exhibiting her complaint.' Subdivision 3 of section 1763 of the Code is in somewhat different phraseology and does not limit the relief to the wife. Instead of the words ' the parties have become and remained inhabitants of this State ' the existing law provides that the parties shall ' have continued to be residents thereof at least one year.' The verb ' continue ' in the context in which it is used in the statute may be defined as: ' To protract or extend in duration; to persevere or persist in; to cease not.' (Webster's Int. Dict., ed. 1906.) That is to say, the ' continued ' residence of the parties, which must be at least one year, was one that had not ceased up to the time of the separation of the parties. Any other interpretation would permit one who had lived in this State with her husband for one year at any time during their married life, no matter at what period thereof and notwithstanding that they had spent almost their entire life up to the time of separation in another State or country, to take up a residence here and bring an action for a separation in our courts. Such a situation is scarcely one that the revisers of the Legislature could have contemplated, particularly when it is borne in mind what omission in the Revised Laws of 1813 it was intended by the amendment to supply. This view is fortified when one considers the general rule ' that the courts of this State have no power to adjudge the status of parties residing beyond its jurisdiction.' (*Gray* v. *Gray*, 143 N. Y. 354, 357.) I am of the opinion that subdivision 3 of section 1763 was not intended to cover the case of parties married without the State who at some time had maintained a residence in this State for at least one year, but who had voluntarily given up their New York domicile and established a new domicile in a foreign State, where the acts complained of occurred and where the defendant has continued his domicile up to the time of the commencement of the action. As this court has no jurisdiction the complaint must be dismissed."

While I am not prepared to go to the extent of holding, as did Mr. Justice GREENBAUM, that not only must the residence of the husband and wife be joint, but that it must continue up to the time of their separation, I am persuaded that in the main the *Elwell* decision is in consonance with the intent and purpose of subdivision 3. It seems to me that under that subdivision a marital domicile is requisite, and there was concededly no such marital domicile here. I hold, therefore, that the plaintiff's second cause of action does not come within any of the provisions of section 1162 of the Civil Practice Act and that, consequently, such second cause must be dismissed.

As to the third cause, I am satisfied that the agreement of November 2, 1928, and the general release of the same date, which formed a part thereof, ought to be set aside.

True, it has been held that the wife " is the best judge of what she needs for her support and the amount may be fixed and settled by an agreement made after actual separation without violating any principle of law or any statute now in existence." (*Winter* v. *Winter*, 191 N. Y. 462, 474.) Nevertheless, if it should develop that the provision for such support was inadequate, and that she accepted it inadvisedly and imprudently, a court of equity has power to set it aside. (*Hungerford* v. *Hungerford*, 161 N. Y. 550.) The wife's agreement to " accept a sum that is insufficient is an agreement to relieve her husband *pro tanto* at least from his liability to support her. This is equally invalid as an agreement to entirely relieve him." (*Glusker* v. *Glusker*, 108 Misc. 287, 291.)

The evidence does not convince me that any fraud was practiced upon the plaintiff. The parties acted honestly and in good faith. There was no deliberate or premeditated imposition. The accusation of a conspiracy is not sustained. Plaintiff's prior attorney testified that the plaintiff, before executing the agreement, made an intensive investigation of the defendant's condition. I do not believe that the plaintiff was overreached or that there was any intention to mislead or unduly induce her to make the agreement. The defendant himself at no time had any part in the negotiations. At the time the agreement was executed the defendant's financial condition was at a very low ebb. His brother virtually supported him. Nevertheless, I am convinced that all parties acted under a mistaken notion as to the precise condition of the defendant's health. Furthermore, the defendant reopened his office and resumed his practice in January, 1929. In 1925 the defendant's net income was $6,000; in 1926, $6,724; in 1927, $6,155, and in 1928, $4,416. Among other personal expenses he was required to pay alimony to his first wife. Apparently his practice now is on the decline.

Contracts between husband and wife are governed by rules different from those applicable to other contracts of settlement. The State is interested. The element of public policy enters.

"In the public interest the state has ever deemed it essential that certain obligations should attach to a marriage contract, amongst which is the duty of a husband to support his wife. Defendant was, therefore, shorn of power to enter into any arrangement or contract which would relieve him of such obligation. While the law provides that for certain definite reasons a separation may by judicial determination be granted to a husband or wife, the obligation that the husband shall support the wife continues.

"In the instant case the husband and wife are living apart. The manner in which the wife is to be supported by the husband in a discharge of the obligation imposed upon him is not dependent upon any whim or caprice on his part, neither is he permitted to arbitrarily determine the measure of support which he shall provide for his wife. To clothe a husband with such discretion might easily result in a wife becoming a public charge, while a husband might continue to live in luxury. The law is not only more stringent but more merciful and requires that the measure of support shall be commensurate with the manner in which the parties have lived and a consideration of the ability of the husband to furnish means of support." (*Tirrell* v. *Tirrell*, 232 N. Y. 224, 229.)

The conscience of the court compels the conclusion that despite the honesty, fair dealing and good intention of the parties, the agreement was an improvident one and cannot be upheld. (*Gewirtz* v. *Gewirtz*, 189 App. Div. 483; *Levy* v. *Dockendorff*, 177 id. 249; *Pelz* v. *Pelz*, 156 id. 765.)

Submit findings in accordance herewith, on notice.